All rise. The Illinois Appellate Court First Division is now in session. I would like Justice Romney to present. Thank you very much. Please be seated, ladies and gentlemen. And welcome to all of you to the Illinois Appellate Court, First Division, First District. We have two cases on the call today, one at 10, one at 1030. Lawyers that are going to be presenting at this point, once the case is called, I want you to state your name and your place and who you represent. You will get, according to rule, 20 minutes to argue. So the appellant gets 15 and 5 if you want, or 20 at the beginning, whatever you'd like. And the respondent gets 20. So are we ready to call the first case, ma'am? Oh, just to make sure you know that this is not an amplifier. It's a recording device. So speak up nice and loud so we can hear you. Try to get your first arguments, your strongest arguments at the beginning. And then we may or may not have some questions. We probably will have some questions, but anyway. Good morning. Case number 14-3474. People with a schedule of noise versus their line of grant. Okay. And good morning, counsel. For the record, please. Rebecca McKee, I'm here. That's correct. Spell your last name. Ellie B. White. Thank you. Rebecca Sacks, R-I-E-E-A-N-A-S-A-C-H-S. On behalf of the people of the state of Illinois. Thank you. Just observing. Okay, very good. Thank you. Are you ready to receive counsel? If you would. Good morning, Your Honors. My name is Rebecca Levy from the Office of the State Appellate Defender, arguing on behalf of Mr. Gray. Some loud counsel. Don't forget. Gray was convicted of aggravated violent hijacking, armed robbery, aggravated kidnapping, and aggravated battery after a jury trial. We're not contesting his convictions or sentences for aggravated kidnapping or aggravated battery. But we are contesting his convictions and sentences for aggravated violent hijacking and armed robbery. Regarding his convictions for those two offenses, the state failed to prove that Gray was armed with a dangerous weapon either prior to or during those two offenses. Well, it doesn't depend on how long those crimes lasted. And I think an argument is to be made, though I'm not sure the state quite made it, but I see an argument that those crimes continued throughout this ordeal by virtue of the ongoing use of force throughout this ordeal. They had to maintain, your client was found by a jury, to have maintained control of the car, control of the victim's personal belongings for 18 hours. So that maintaining control, I think through force, I think an argument could be made that the crimes were ongoing throughout. And why would that not be true? Both offenses are considered complete when the defendant has dispossessed the victim. Well, they're complete in that the elements are met, but they're not over. Just because something is complete, I think the Supreme Court has made clear, it's not necessarily over. It can be ongoing. If the force is ongoing, the crime is ongoing, even though you could certainly have convicted them as soon as they had dispossessed the victim. I don't understand why necessarily you believe the crime's not ongoing. Once the victim was dispossessed of her car and her property, the objective of the events changed. It was after that that the kidnapping and the aggravated battery occurred. The attacks in this case are very specific in that there were two initial crimes. She could have theoretically regained control of her car, regained control of her property, because of the ongoing use of force. She didn't, but she could have theoretically. She was still there. She was right in proximity. They maintained control over both those things. She could have. I mean, I don't know that she could have regained control either because after she had been dispossessed of her car and her property, she was tied up. And that goes to the… They maintained control over her property and her car. And I think Dennis and other Supreme Court cases speak to if there's an ongoing use of force, there's an ongoing crime. I think specifically in Dennis, the Supreme Court discusses ongoing use of force to effectuate an escape. Okay. That's right, and that's not what we have here.  Is there any reason why what the Supreme Court said in Dennis wouldn't apply to the use of ongoing force to maintain control? You can think about it. We'll come back to you on it. Because the State doesn't quite make this argument. I'm not sure why, but it seems to me that it's an argument to be made. Yeah, you're right. The State doesn't argue that, and it's brief. You understand that's not it. I do, I do. I just want to ask you this. As far as your argument is concerned on this issue, what's your strongest case for the fact that once the prima facie case is met or whatever the requirements are for either aggravated vehicular hijacker or armed robbery are met, then it's done? I mean, the crime is completed. There's nothing else that he could be held accountable for. What case says that? I think the strongest case is People v. Simmons from this court where the defendant used a gun after. There was no firearm, was there? What? There was no firearm, was there? It was an ice skate. Yes, in this case there was no firearm. The State alleged that the dangerous weapon as to the robbery and the vehicular hijacking that the defendant was armed with a bludgeon. And the bludgeon was the bottle? A glass bottle. Isn't that a 75 case, though? It is, but it hasn't been overruled. But it's before the statute was changed, is it not? It was before the statute was changed, but I don't think that when the statute was changed it affected the elements of either crime or the State doesn't have any cases to support that argument in the brief. If Simmons does use the language, or to secure their retention, it says the gun was not used to obtain the records or to, quote, secure their retention, which I think only confirms what I'm suggesting, which is securing the retention, maintaining control, still suggests that the force and the crime are hunkered. Well, I think in Simmons, though, after the robbery occurred, the defendant used the gun to batter the victim. But it wasn't to secure the retention of what he had taken. How is that different in this case? It's not. Because I suggested to you that keeping her tied up, hitting her whenever she moved, then starting to use the bottle, all of that is securing the retention of the car and the personal property that they had taken. But, again, in Simmons, you make the same argument that he used the gun to batter the victim in order to secure his retention, the defendant's retention of the car. The court specifically said it was not to secure the retention. That's my point. Okay. Let me ask you this. If, in fact, we say the crime is ongoing and, therefore, the conviction for aggravated vehicular hijacking, thank you, or armed robbery could be maintained, is there still any argument? Does that defeat your sentencing argument, or is there some separate sentencing argument? I think that both sentencing arguments. I'm talking about your first sentencing argument, not the argument. I think that the question of whether or not the defendant inflicted great bodily harm is separate from whether or not he was armed with a weapon. I agree with you, but if the crime is ongoing, if the crime lasted longer than you want us to see the crime having lasted, doesn't that also answer the great bodily harm issue? I don't think so, because the statute that the defendant was sentenced under, the language of it says specifically that the conduct leading to the conviction for the enumerated offenses resulted in great bodily harm to the victim. And I think the truer fact could find that that's a different question. I mean, the conduct leading to the conviction resulted in great bodily harm. And here, there's absolutely no evidence at all that the conduct leading to the aggravated vehicular hijacking or the armed robbery. Slow down a little bit. Sorry. Could you raise your voice? There's no evidence of the conduct leading to the defendant's convictions for the vehicular hijacking and the robbery resulted in any harm, bodily harm at all to the victim. She testified that when the defendant took the keys out of the ignition and she got into the passenger seat, he didn't touch her. There was no harm to her. And then when he began to tear at her clothes to remove her wallet and cell phone, he tore at her clothes, but she didn't testify that she suffered any bodily harm from that at all, let alone any great bodily harm. Counsel, the whole case revolves around the use of the bottle, does it not? Yes. Because one of the ice cube components in Aliprost. Right. So do we have any idea when the bottle was introduced into the vehicle? We don't. She didn't testify to seeing one prior to either the vehicular hijacking or the armed robbery. The bottle was in the car later, but after those two events happened, once the defendant gained control of the car and was driving around, they made several stops, at least three different gas stations, a liquor store, which presumably is when she testified. But she testified that she was hit by the bottle by both the defendant and the co-defendant, correct? Yes, but much later. It wasn't until after he was driving the car. How do we know? What do you think we should look at in the record? I'm going to ask the State the same question to figure out when that started because I think it's a little mushy, legal term, mushy, not clear in the record when that started. Well, I mean, I think her testimony is very clear that it started after he had control of the car and her. Yes, I think that's true. But I think after she was tied up. Yeah. I mean, they threatened her verbally while they were tying her up and then throughout the rest of the evening or into the next day. But prior to that, she was not harmed. But you would say we look to her testimony in terms of when the bottle got introduced and that it's not clear in her testimony when it got introduced except that it was clearly after they had control of the car? Yes. She doesn't testify to being hit with a bottle or even seeing one. She never saw a bottle, but she testified of being hit with it until after she had been tied up. Was she hit by a snow shovel? By what? A snow shovel. I think she did testify that she was hit over the head with a shovel that was in her car,  Counsel, is there a specific timeline? I mean, this was an 18-hour event, correct? Mm-hmm. During the trial, was it set up very carefully as to what timeline was in place as far as when the bottle entered or not? There was no evidence as to when the bottle entered the car. I think it can be inferred that it entered the car after the defendant started driving. But how can we infer that? Because it was after he started driving that they made those very stops. Well, and does the fact of when it entered the car make a difference or when it was used? For the aggravated vehicular hijacking and the armed robbery, it's when it was used. I'm sorry, it was when it entered the car because they have to just be armed with it. They don't have to. We're not arguing that as opposed to what the state claimed in there before. We're not arguing that there needs to be some sort of concurrence between the use of force and the weapon. Yeah, just being armed with it. Just being armed with it. And remind me, was she specifically asked, she was I think, whether she saw a bottle at the time that they entered her car and she said no? Yes. Right. Her face was bludgeoned, is that right? Correct. Her face was bludgeoned? Yes. And she could not see well because of the swelling? Yes. What did the evidence tech find as far as the evidence on the bottle? The evidence on the bottle. Wasn't there blood on the bottle when it was found? Yes. But we are disputing that he used a bottle to hit her. Okay. But we are disputing that. He had blood on it. Right. It did. But we're disputing that. It was wet. Yeah. And that it didn't happen. The hitting her didn't result, the hitting her did result in violent harm, but that didn't happen. And the conduct leading up to the enumerated offenses of aggravated vehicle hijacking and robbery. All right. Continue. The court's same finding of great bodily harm increased the mandatory minimum amount of time that Gray would have to serve in prison for a robbery and aggravated vehicle hijacking convictions. And this denied him his constitutional rights to due process in a jury trial because the state didn't prove and the jury never found that the conduct leading to those two convictions resulted in great bodily harm to the victim beyond the reasonable doubt. So do you think the state should have charged him with aggravated battery? It did. He was convicted of aggravated battery. Right. Or what other posture could the state have taken? Just ignore all these things that happened once, as you say, the things were completed? No. I think that they're going to make the finding of great bodily harm and that is after he's convicted at sentencing. The premise is that since that increases the minimum amount of time he has to spend in prison, that needs to be, that great bodily harm finding is an element that needs to be proven to a jury beyond the reasonable doubt. And here, that didn't happen. It was the clerk who made the finding, not beyond the reasonable doubt, but just by the ponderance of the evidence. Tell me why you think Eliane, I'm going to pronounce it wrong, Eliane changes, I mean because there are a lot of post-apprendi cases in which we have said this truth in sentencing statute doesn't violate apprendi. How do you think Eliane changes that? Why does that make those cases not good law? Well, most of the cases rely on apprendi and the fact that apprendi stated that and the fact that that increases the maximum amount of time. And here it increases the minimum amount of time. Well, it also increases the maximum. It does. But those cases, most of them, other than I think Robinson, mostly just analyze it under the maximum, not in terms of the actual effect of the sentence or the reducing the good time credit. I don't know, did we ask you at the start, do you want to save some time for rebuttal? I did ask. You want to do 15 to 5, right? Oh, yes. Yes. Thank you. Sum up for right now. We're asking that this Court reduce his armed robbery and aggravated vehicular hijacking convictions to vehicular hijacking and robbery and alternatively... You're taking out the aggravated portion? Is that what you're doing? Yes. Thank you. You're armed also. Say again? The armed portion of the robbery and the aggravated portion of the vehicular hijacking. Thank you. Counsel, again, your name, please. I am Assistant State's Attorney Robana Sacks, appearing on behalf of the people of the State of Illinois. May it please the Court. The people respectfully ask this Court to affirm defendant's conviction and sentences for armed robbery and aggravated battery for the following reasons. First, looking at the record in light most favorable to the people and the prosecution, it was reasonable for the jury to infer and to conclude that the defendant and co-defendant were armed with a dangerous weapon when they committed both the armed robbery and the aggravated vehicular hijacking. Are you saying the evidence supports the finding that they had the bottle when they entered the car? Is that what you're saying? I think while we have to look at the record in light most favorable to the people, and I think the testimony of Laura O'Donnell creates a reasonable inference that the defendant and co-defendant were armed with a dangerous weapon when they entered the car. She was asked, and she said no. She was asked, did you see a bottle, and she said no. She said no, but she also testified that she was hit with the bottle. The question is, did they have the bottle? You're saying that the evidence could be read to say that they had the bottle when they entered the car. That's what you're saying. And I'm saying whatever. I'm saying that is a reasonable inference. She was asked, and she said no. Correct. And that actually also kind of raises the point that that question was in front of the jury. The jury considered the question whether or not the defendant and co-defendant were armed with a dangerous weapon. I don't believe, tell me if I'm wrong, that the jury was ever instructed that they had to find that they had the bottle at the time they entered the car. Am I right? No, you are right. That is correct. What do you think about what my suggestion that the crime actually, that these two crimes, vehicular hijacking and robbery, continued throughout the course of this ordeal? Yes, Your Honor, and we agree with that. First and foremost, the defendant argues that they took her car key and that that completed the crime of aggravated vehicular hijacking, and we disagree with that. Taking someone's car keys does not dispossess the person from their car. If they're right there. If they're right there, if they're in the car. If you drive off, I suppose. Exactly, yes. But if the person is in the car, just having the car keys does not dispossess them of their car. As you mentioned earlier, they can try to regain possession throughout this entire 18 hours. So by hitting her and by tying her up, that was the force that was used to dispossess her of the car. And the Supreme Court in Dennis did state that the key elements of armed robbery are the force and the taking. And that same logic, I would argue, also applies to the aggravated vehicular hijacking. The key elements here are the force and the taking of the car. And in this case, the force was ongoing. So by hitting her and by hitting her with a bottle, which the defendant concedes to, that was used as a means to dispossess her of her car. So do you say Dennis is the strongest case on that argument? I would argue that Dennis sets forth the elements to make this argument. I mean, in Dennis, the defendant was convicted of an accountability theory. So his friend walked up and committed the armed robbery and then went back into the car. That's where the escape comes in because the defendant in Dennis then drove off. So that's where the Supreme Court there said that the force and the taking were complete because in Dennis it was more of a one-and-done armed robbery. If here is the gun, please give me your property, and then I drive off. But there's no cases really on all fours on this. Right, because it's not a one-and-done scenario. We have multiple crimes. We have a series of events. And arguably the defendant tries to compartmentalize these events, but they are intertwined with one another. There are multiple acts that establish multiple crimes, the aggravated kidnapping, the cloaking her with the coat. However, we argue that the force that was used to dispossess her of her car and her property was ongoing. Also, her testimony, again, was favorable to the people. She does say that she gave the defendant her PIN number after she took her ATM card because, and I quote, I was scared that if I didn't give it to him, he'd hit me again. I was tired of being hit, end of quote. That's in the record of BB38-39. So that indicates that she had been hit before. Again, and that establishes a reasonable inference for the jury to conclude that they hit her and that they hit her with a bottle. To go back to Justice Conner's earlier question, do you think that it is clear in the timeline when the bottle got introduced? I don't think that that is required by the statute. We needed to show that exactly when the bottle was used and introduced. I think we were only required to establish a reasonable inference that they carried on about their personless bottle. And she did testify on direct examination that the bottle did not belong to her when she was shown the actual glass bottle in the court. And they found a glass bottle that was covered in her blood, with her blood, near the scene where they found her. And again, I do believe that that establishes a reasonable inference for the jury to conclude that the bottle must have come from somewhere. If it wasn't hers, the defendant and co-defendant brought it. But do you think it is clear when it got introduced? I'm not saying it needs to be necessarily. I'm just asking you if you think it is clear in the timeline. Again, I think the inference was established that it was there. And again, that's how I read the argument. The defendant requests a precise moment for the state to point out, at this moment they pull out the bottle and at this moment they use the bottle. And that's kind of where they rest their argument on. However, the statute does not require that. The statute requires the connection between carrying the bottle on or about their person and the forceful taking of the property. Is the decisive moment having the possession at the time that O'Donnell is involved in this? Pardon? In determining the possession of the bottle, was Ms. O'Donnell involved in this situation? Technically, she's not involved. It's not her bottle. It's the defendant and co-defendant who brought the dangerous weapon. But we can infer or the jury can infer from her testimony that the defendant and co-defendant must have brought the bottle into her car. It wasn't hers. It wasn't there before. It must have gotten there somehow. And to request that the state proves the exact time of when this bottle was introduced through direct evidence, I don't think that that was required by the statute. We were allowed to use circumstantial evidence. And I do believe that the state did that here in this case. Are you relying on the ice skates? And what about the fact that that count was null across? Yeah, that was null across. But the ice skates, turning to the issue of the trial court's finding of great bodily harm, again, during the armed robbery, she did testify that defendant and co-defendant repeatedly struck her with their fists in an ice skate. And every time she moved after they took her wallet, before she testified to them actually taking their wallet, her testimony was, and she did, she testified that they first took her keys. They ripped her clothes to get her cocaine. They took her phone, broke it in half, threw it out of the window. She was ordered into the passenger seat. And then she testified that both defendant and co-defendant struck her head and at some point took the ice skates that she had in the car and hit her with those. And then finally, at the end, she testified to them taking her wallet and her debit card and that she gave them the PIN number because she was tired of being hit. So it was the ice skate. Again, I think it was reasonable for the trial court then to find that the conduct that the defendant and co-defendant engaged in throughout this armed robbery based on her direct testimony, hitting her with ice skates, and that that caused the great bodily harm for the armed robbery. And secondly, that kind of comes back to my initial point that the vehicular hijacking was ongoing and that the force used throughout the vehicular hijacking, that that again caused her great bodily harm. She spent three days in the hospital. She was diagnosed with multiple blunts, trauma to the head and facial areas, multiple body contusions, right and left ear hematoma, a broken nose, lacerations. So that most certainly constitutes great bodily harm. I don't think the defendant is arguing otherwise, just saying that that was not part of these crimes. Yeah, but I think, again, we are talking about a series of events that lasted for 18 hours. And I think there is sufficient evidence in the record that leads to the conclusion that one of these blows or some of these blows that were committed throughout the course of the armed robbery and the aggravated vehicular hijacking caused her injury. Again, I don't think that the purpose of the statute, that that requires the state to specifically determine over the course of 18 hours of, quite frankly, torturing someone, to then, in retrospect, to determine which blow caused what injury and precisely when in these 18 hours, which blow caused which injury within these 18 hours. Do you want to address the sentencing argument or is your argument the same? For the Apprendi argument, we stand by our argument that was raised in our brief. We argue that Apprendi and Avene do not apply to truth in sentencing provisions. The good conduct credit provisions affect the manner of the sentence that the defendant ultimately serves and not the sentence that is imposed. And with that, Your Honors, for these reasons and the reasons stated in our brief, we ask this Court to affirm. Thank you. Thank you. In Apprendi, the U.S. Supreme Court, regarding whether or not a sentence, a finding, increases the punishment, specifically stated the relevant question is not one of form but one of effect. Does the required finding expose the defendant to greater punishment than authorized by the jury's guilty verdict? And here, it's not just the manner in which he serves the sentence. He will be serving 21 years longer before he's even eligible for a good time to be released based on his conduct in prison. It absolutely increases his punishment. It's not – it doesn't just affect the manner in which he serves the sentence. In Illinois, sentencing courts have no authority to take away the time credit, unless there is a finding that the conduct leading to the conviction for the inhumane offense resulted in greater punishment. If we were to accept that argument, we would have to find the truth in the sentencing statute unconstitutional, would we not? Well, you could find it unconstitutional, but you could also find that it, as applied to this defendant, it violated his rights in that the jury – Right. The truth in the sentencing statute is statutory under the language to be applied by the judge. That's who's supposed to do it under the statute. So you're saying judges, you can't do that. Right. That has to be done by a jury. Yes. We understand that. Because it does increase the amount of time that the defendant actually serves in prison. So, yes, significantly in this case, in particular. And the jury very well could have found that the state did not prove the honor reasonable about that the conduct leading to the convictions for aggravated vehicular hijacking and robbery did not result in great bodily harm. Now, this was aggravated to the trial court, though. No. So as far as forfeiture? We're arguing that it's plain error. Plain error. First crime. First crime. And also ineffective assistance of counsel. Alternatively. All right. Counsel, finish up, if you would, please. If this Court doesn't reduce his convictions for armed robbery and aggravated vehicular hijacking, we are asking that it's ordered the circuit court to issue a corrective minimus stating that he can receive day-for-day good time credit because the state did not prove the honor reasonable about to the jury that the defendant or that the victim suffered great bodily harm as a result of the conduct leading to those two offenses. Thank you. Thank you very much. And lawyers in this case, thank you for your excellent presentation here today. We will take this case under advisement, and you will be certainly hearing from us. Thank you very much.